[Cite as *White v. Buehrer*, 2017-Ohio-8254.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ANN WHITE | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27295 |
| | : | |
| v. | : | T.C. NO. 15-CV-6758 |
| | : | |
| STEPHEN P. BUEHRER, | : | (Civil Appeal from |
| ADMINISTRATOR, BUREAU OF | : | Common Pleas Court) |
| WORKERS' COMP., et al. | : | |
| | : | |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ____20th___ day of _____October_____, 2017.

. . . . . . . . . .

GARY D. PLUNKETT, Atty. Reg. No. 0046805 and RACHEL D. SIEKMAN, Atty. Reg.
No. 0091012, 3033 Kettering Blvd., Suite 201, Dayton, Ohio 45439
        Attorneys for Plaintiff-Appellee

THERESA M. MUHIC, Atty. Reg. No. 0040649 and ANTHONY V. JAGODITZ, Atty. Reg.
No. 0083717, Fifth Third Centre, Suite 1300, 1 S. Main Street, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant, Five Rivers Health Center

NATALIE J. TACKETT, Atty. Reg. No. 0040221, Assistant Attorney General, Workers'
Compensation Section, 150 East Gay Street, 22nd Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellant, Bureau of Workers' Compensation

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} The Five Rivers Health Center and the Bureau of Workers' Compensation (BWC) appeal from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of Ann White, a Five Rivers' employee, in her administrative appeal from a determination that she was not eligible for workers' compensation. In granting summary judgment, the trial court found that White was eligible to receive workers' compensation.

{¶ 2} For the following reasons, the judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

### Facts and Procedural History

{¶ 3} White was injured at work on June 15, 2015. She fell as she walked through an exam room to deliver mail and broke her right hip. She filed a claim for workers' compensation.

{¶ 4} In the administrative proceedings, White presented her own testimony that the exam room floor had been "tacky," causing her to fall. She also presented an expert report from someone who examined the floor two weeks after the accident; the expert opined that the floor may have been stripped but not yet rewaxed at the time of White's fall. Five Rivers presented the testimony of a senior nurse who worked in the exam room the day of White's fall, the day before, and the day after; the nurse testified that the floor had not been "tacky" or otherwise hazardous. Five Rivers also presented the testimony of its human resources manager and documentary evidence from Miami Valley Hospital, which maintained the floors in Five Rivers' offices, that the floor had not been stripped and rewaxed for more than a year prior to White's fall.

**{¶ 5}** On October 2015, a district hearing officer and a staff hearing officer of the Ohio Industrial Commission each denied White's claim and disallowed workers' compensation benefits. White appealed, and the Industrial Commission "refused" the appeal.

**{¶ 6}** On December 29, 2015, White filed a complaint in the Montgomery County Court of Common Pleas, appealing from the denial of her claim for workers' compensation. On June 2, 2016, White filed a motion for summary judgment; she attached her own affidavit asserting that the floor in the room where she fell had been "very tacky" and "duller in appearance * * * than normal," that she had injured her hip in her fall, and that she had had no prior problems with her hip. She argued in the motion that 1) there were no genuine issues of material fact that her injury occurred in the course of her work and arose from her work; 2) the injury was "explained" by a workplace condition, citing her affidavit that her foot "caught on the floor,"[1] and therefore she was entitled to compensation; and 3) none of the exceptions to compensation for an "on-premises, explained injury" (horseplay, intoxication, and idiopathic conditions) applied. Five Rivers and the BWC each filed memoranda contra White's motion for summary judgment, to which they attached White's medical records, reports related to the fall, and a letter from White's expert to White's attorney.

**{¶ 7}** On September 13, 2016, the trial court granted White's motion for summary

---

[1] The expert opinion on which White relied before the hearing officers was not attached to her motion for summary judgment or relied upon in the motion. The staff hearing officer had found the expert's report "not reliable or persuasive," after Fiver Rivers and the BWC presented maintenance records which contradicted the expert's theory that the floor had been stripped and not yet rewaxed at the time of White's fall.

judgment, finding that she was entitled to participate in the workers' compensation program. Subsequently, the trial court also granted White's motion for reimbursement of costs and attorney fees and ordered that the BWC pay her an agreed-upon amount ($3,303.68).[2]

{¶ 8} Five Rivers and the BWC appeal from the trial court's judgment.

***Summary Judgment Standard***

{¶ 9} Pursuant to Civ.R. 56(C), summary judgment is proper when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds, after construing the evidence most strongly in favor of the nonmoving party, can only conclude adversely to that party. *Zivich v. Mentor Soccer Club, Inc.,* 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). The moving party carries the initial burden of affirmatively demonstrating that no genuine issue of material fact remains to be litigated. *Mitseff v. Wheeler,* 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). To this end, the movant must be able to point to evidentiary materials of the type listed in Civ.R. 56(C) that a court is to consider in rendering summary judgment. *Dresher v. Burt,* 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996).

{¶ 10} Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. *Dresher* at 293; Civ.R. 56(E). Rather, the burden then shifts to the nonmoving party to respond, with affidavits

---

[2] Notices of appeal were filed in October 2016, after the trial court's decision granting summary judgment was entered, but before the issue of attorney fees was resolved. Due to concerns about the finality of the trial court's order, and with the agreement of the parties, we stayed the matter and remanded to the trial court for resolution of the attorney fee issue. An amended App.R. 11(B) notice was filed on August 29, 2017.

or as otherwise permitted by Civ.R. 56, setting forth specific facts that show that there is a genuine issue of material fact for trial. *Id.* Throughout, the evidence must be construed in favor of the nonmoving party. *Id.*

**{¶ 11}** We review the trial court's ruling on a motion for summary judgment de novo. *Schroeder v. Henness,* 2d Dist. Miami No. 2012 CA 18, 2013-Ohio-2767, ¶ 42. De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence, without deference to the trial court, to determine whether, as a matter of law, no genuine issues exist for trial. *Ward v. Bond,* 2d Dist. Champaign No. 2015-CA-2, 2015-Ohio-4297, ¶ 8.

**Framework for Workers' Compensation**

**{¶ 12}** R.C. Chapter 4123 governs Ohio's workers' compensation program. For purposes of workers' compensation, an "injury" includes "any injury, whether caused by external accidental means or accidental in character and result, received in the course of, and arising out of, the injured employee's employment." R.C. 4123.01(C). Both the "received in the course of" and "arising out of" conjuncts in this formula must be satisfied, and "it is 'axiomatic' that the formula be liberally construed 'in favor of awarding benefits.' " *Hirschle v. Mabe*, 2d Dist. Montgomery Nos. 22954 and 22975, 2009-Ohio-1949, ¶ 12, quoting *Fisher v. Mayfield,* 49 Ohio St.3d 275, 277-278, 551 N.E.2d 1271 (1990). Workers' compensation cases are often fact-specific, and "a reviewing court must examine the separate and distinct facts of each case." *Id.*, citing *Fisher* at 280.

**{¶ 13}** The parties do not dispute that White sustained her injury while in the course of her employment. It is disputed whether the injury arose out of her employment.

***The Trial Court's Decision***

{¶ 14} In concluding that White's injury occurred in the course of her employment and arose out of her employment, the trial court found that the employer's alleged negligence in creating a hazardous condition was irrelevant to the question of whether the injury was compensable. The court concluded that any argument about the condition of the floor "devolved into a negligence analysis which is not relevant to this case." The trial court also found that White's accounts of the fall – initially stating that she had tripped over her own feet and later reporting that her shoe had stuck to the floor – were not "wildly inconsistent," especially considering the pain she most likely was in at the time of the initial report.

{¶ 15} The trial court relied extensively on *Griffin v. Hyro-Matic Div., General Motors Corp.*, 39 Ohio St.3d 79, 529 N.E.2d 436 (1988), a case in which an employee slipped and fell on "a wet or icy spot" while crossing a driveway between her place of work and its parking lot after a snowfall. In that case, as in this one, the employer conceded that the employee was injured in the course of her employment, but disputed whether the injury arose out of her employment. The *Griffin* court distinguished accidents on the employer's premises from those that occur when an employee is coming and going from work for the purposes of workers' compensation. In so holding, the court stated that the special hazard exception which can bring an off-site accident within the purview of workers' compensation does not apply to on-site accidents; "the existence or absence of a special hazard on the employment premises is wholly irrelevant to the analysis of an on-site injury." *Griffin* at 81. In this context, the supreme court stated that neither the negligence of the employer nor the contributory negligence of the employee was relevant

to whether an on-site injury was compensable.[3]

{¶ 16} Relying on the language of *Griffin,* the trial court rejected Five Rivers' argument that White's injury was not compensable because White had failed to demonstrate that the floor on which she fell presented a hazard for which Five Rivers was responsible. In other words, the court rejected Five Rivers' argument that the compensability of the injury was conditioned on Five Rivers' having created a hazardous condition in the workplace. We do not disagree that whether the floor was "tacky" or had recently been stripped, as White and her expert had asserted, was irrelevant to whether the injury arose out of White's employment. However, certain other issues which were not discussed in *Griffin* were relevant in this case, and the trial court did not address, or erroneously addressed, those issues.

{¶ 17} The trial court also did not consider the existence of idiopathic causes of the fall (White's preexisting medical conditions), upon which the BWC had based its argument that White was not entitled to compensation. The trial court concluded that the BWC had been required to raise the issue of idiopathic causes as an affirmative defense, and could not raise the issue for the first time in response to White's motion for summary judgment.

### Types of Workplace Injuries and Their Compensability

{¶ 18} In our view, *Waller v. Mayfield,* 37 Ohio St.3d 118, 524 N.E.2d 458 (1988)

---

[3] *Griffin* focuses largely on the distinction between the compensability of injuries incurred while coming and going from work as compared with injuries incurred on the work premises. Although the *Griffin* majority opinion did not mention *Waller*, a concurring opinion observed that, because the reason for Griffin's fall (ice) was "clearly explained, * * * there is no need for an 'unexplained fall' analysis," as in *Waller.* Although some of its statements of law may be applicable in this case, we note that the facts and the issues discussed in *Griffin* differ significantly from the facts before us.

provides a more helpful framework for analyzing eligibility for workers' compensation in White's case than *Griffin*. In *Waller*, the claimant fell while descending stairs at his place of employment, and there was no question or evidence of any specific hazard, such as water, oil, or other foreign substance, on the stairs at the time of his fall.

{¶ 19} In *Waller*, with respect to workers' compensation claims, the supreme court observed:

> All risks causing injury to a claimant can be brought within three categories: risks distinctly associated with the employment, risks personal to the claimant, and "neutral" risks – i.e., risks having no particular employment or personal character. Harms from the first are universally compensable. Those from the second are universally noncompensable. It is within the third category that most controversy in modern compensation law occurs. The view that the injury should be deemed to arise out of employment if the conditions of employment put claimant in a position to be injured by the neutral risk is gaining increased acceptance. 1 Larson, The Law of Workmen's Compensation (1985) 3-12, Section 7.00.

*Id.* at 123. "Risks personal to the claimant" are also called idiopathic risks, and refer to "an employee's preexisting physical weakness or disease, which contributes to the accident." *Waller* at fn. 3, citing 1 Larson, The Law of Workmen's Compensation 3-308, Section 12.00.

{¶ 20} *Waller* noted that an employee suffering an unexplained slip or fall at work is described by Larson as an illustration of a case involving a "neutral" risk. *Id.* at 122-123, citing Larson at 3-13 and 3-14, Section 7.30.

**{¶ 21}** In the syllabus of *Waller*, the supreme court also set forth the following standards regarding the burden of proof regarding an unexplained fall:

> 2. In worker's compensation cases involving an unexplained fall, the claimant has the burden of eliminating idiopathic causes.

> 3. In a workers' compensation case where idiopathic causes for an unexplained fall have been eliminated, an inference arises that the fall is traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises.

*Waller*, paragraphs two and three of the syllabus. Further, as in *Griffin*, the court in *Waller* repeatedly emphasized that "compensability is not dependent upon negligence or fault on the part of the employer," and therefore the claimant generally is not required to show that a hazardous condition existed. *Id.* at 122.

**{¶ 22}** In sum, *Waller* held that,

> In unexplained fall cases, the claimant has the burden of eliminating idiopathic causes. Therefore, we also hold that in a workers' compensation case where idiopathic causes for an unexplained fall have been eliminated, an inference arises that the fall was traceable to some ordinary risk, albeit unidentified, to which the employee was exposed on the employment premises. Such a result does not relieve claimants of their burden of proving causal connection to employment. The inference is reasonable that the fall was caused by the employment environment once claimant meets his burden of eliminating idiopathic causes and there is no evidence that any force or condition independent of the employment caused the fall.

*Id.* at 124. Under such circumstances, workers' compensation shall be provided. *Id.* Stated differently, the supreme court held that, "[w]here the course of employment test is fully met, where cause-in-fact cannot be directly established, and where the claimant has met his burden of eliminating idiopathic causes, we interpret the Workers' Compensation Act to allow the inference that the unexplained fall arose out of the employment." *Id.* at 125.

{¶ 23} Unexplained fall cases to which the inference applies "begin with a completely neutral origin of the mishap." *Id.* at 123, citing *Larson.* Where an idiopathic fall occurs "with an origin that is admittedly personal," the claimant must demonstrate "some affirmative employment contribution" to the nature or extent of the injury (such as the presence of a hazard), and thus "offset the prima facie showing of personal origin," in order to be eligible for compensation. *Id.*

{¶ 24} *See, e.g., Harris v. Ohio Bur. of Workers' Comp.*, 117 Ohio App.3d 103, 690 N.E.2d 19 (1st Dist.1996) (no causal connection existed between employee's injury and his employment where, as a result of a seizure, he fell unimpeded to a concrete floor); *Miller v. Horizons Health Services, L.L.C.*, 2017-Ohio-465, __ N.E.3d __, ¶ 22 (8th Dist.) (where employee with a history of type 2 diabetes and hypertension who had not been taking her blood pressure medication passed out while driving and struck a pole, and employee "did not dispute that her injuries were idiopathic," she was not entitled to workers' compensation); *Chappell v. Wal-Mart Stores, Inc.*, 3d Dist. Marion No. 9-08-43, 2009-Ohio-542 (sickness at work, even with employer's failure to respond to employee's request for a break, did not entitle employee to workers' compensation when she passed out and hit her jaw on the floor); *Nadolny v. Owens-Illinois, Inc.*, 6th Dist. Wood No.

93WD055, 1994 WL 159770 (Apr. 29, 1994) (employee who died following an asthma attack suffered at work was not entitled to workers' compensation).

### Idiopathic Causes of Workplace Accidents

{¶ 25}  Because the supreme court has held that the claimant bears the burden of eliminating idiopathic causes of a workplace injury, the trial court erred in refusing to allow the BWC to challenge White's motion for summary judgment on this basis.  The BWC did not have the burden to establish the presence of an idiopathic explanation for the accident, nor was it required to raise this issue as an affirmative defense.[4]  The trial court erred in so holding.

{¶ 26}  In support of her motion for summary judgment, White asserted that idiopathic causes of an injury constitute an "extremely limited exception" to the compensability of injuries incurred at a workplace and that the existence of such a condition constitutes an affirmative defense to a workers' compensation claim.  As such, she presented very little evidence aimed at eliminating an idiopathic cause of her injury. The only evidence directed to this point was the following statement in White's affidavit in support of her motion for summary judgment: "When I fell, it caused me to fracture my right hip.  I have no history of any problems involving my right hip before – I've never been to a doctor to complain of right hip problems, have never had treatment for my right hip, and have never had pain in my right hip before."

{¶ 27}  There is no dispute that the fall caused injury to White's hip.  However,

---

[4] We recognize that there has been some criticism of this Ohio rule, on the basis that it puts the injured employee in the difficult position of attempting to prove a negative.  *See Brighton v. Rodriguez,* 2014 Colo. 7, 318 P.3d 496, ¶ 28, fn. 7.

the evidentiary material attached to the BWC's and Five Rivers' memoranda contra summary judgment – particularly, some of White's medical records – presented facts that there may have been an idiopathic factor or factors that contributed to White's fall. Listed among her "past medical history" were the following conditions, among others: diabetes mellitus type II, thyroid disease, and "neuropathy in diabetes (leg)." Additionally, the "Patient Active Problem List" contained in the medical records listed peripheral neuropathy, retinopathy, "pain in foot," corns and callosities, and "non compliance w medication regimen." The records described White as having "chronically poorly controlled diabetes and multiple medical problems" and as having "slightly elevated blood sugar" when she was admitted to the hospital; they also indicated that she took numerous medications, including Norco, a pain medication which includes an opioid. Nothing in these records definitively establishes that any of White's preexisting conditions or medications explained her fall, but they raise genuine issues of material fact about the possible role of "risks personal to the claimant" (her medical conditions and medications) in an otherwise unexplained fall.

{¶ 28} Pursuant to *Waller*, because the cause of the fall was not clear, White bore the burden of eliminating idiopathic conditions as the cause of her fall; the burden did not rest with Five Rivers or the BWC to disprove the effects of these conditions. White's statement in her affidavit that she had never had or sought treatment for a hip problem in the past did not satisfy this burden. The evidence at this stage must be directed to whether White's preexisting conditions and medications caused or contributed to her fall, not whether she had any preexisting injury to her hip. A genuine issue of material fact existed as to this issue, and summary judgment was inappropriate.

### *Explained v. Unexplained Falls in the Workplace*

**{¶ 29}** White's motion for summary judgment characterized the analysis in terms of "explained" and "unexplained" injuries in the workplace. In her formulation, an "explained" injury is one in which the cause is clear, and it is "compensable as a matter of law without investigation into the condition of the floor or circumstances of the fall." She further asserts that "it is untenable to allow an employer to recast a disputed mechanism of injury into an unexplained fall analysis." Her argument relies heavily on *Griffin v. Hydro-Matic*, as the trial court did.

**{¶ 30}** This argument ignores idiopathic factors altogether. As discussed above, White bore the burden to demonstrate that there was no genuine issue of material fact about the existence of idiopathic causes, and she failed to do so. Therefore, she cannot be entitled to summary judgment "as a matter of law," as she suggests.

**{¶ 31}** Second, White claims that her fall was "explained," and therefore compensable, because she provided an explanation for it, albeit one that was strongly contradicted by Five Rivers' and the BWC's evidence. This argument begs the question of when a fall is "explained" or "unexplained" and is difficult to reconcile with *Waller*'s framework of the three types of workplace injuries. For example, a fall caused by a risk "distinctly associated with the employment" would be explained and compensable, whereas a fall of idiopathic origin would be "explained" but not compensable. *See Waller*, 37 Ohio St.3d at 123; *see also Brighton v. Rodriguez*, 318 P.3d 496, ¶ 28, fn.7 (holding that putting the burden on the injured party with regard to idiopathic factors "conflates what should be distinct analytical categories. If an idiopathic cause contributed to a fall, then, by definition, the fall is not actually 'unexplained.' ")

**{¶ 32}** White's evidence in support of summary judgment did not remove all factual issues that her injury was distinctly associated with or arose out of her employment, nor were idiopathic causes eliminated so as only to permit the inference that the fall was traceable to an ordinary "neutral" risk of the employment premises. There remains a genuine issue of material fact as to the cause of White's fall; it has not been "explained" in a way that requires, as a matter of law, the inference that the fall arose out of White's employment.

**{¶ 33}** The assignments of error are sustained.

***Conclusion***

**{¶ 34}** The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings.

. . . . . . . . . . . . .

WELBAUM, J. and TUCKER, J., concur.

Copies mailed to:

Gary D. Plunkett
Rachel D. Siekman
Theresa M. Muhic
Anthony V. Jagoditz
Natalie J. Tackett
Hon. Barbara P. Gorman